## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CRYSTAL KAYE TRITES, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>21ST MORTGAGE CORPORATION,<br><br>               Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Crystal Kaye Trites ("Plaintiff") brings this action individually and on behalf of all others similarly situated against 21st Mortgage Corporation ("Defendant") and alleges as follows:

### NATURE OF THE ACTION

1. This action is brought against Defendant for its violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691, *et seq.*

### JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1691.

3. The Court has personal jurisdiction over Defendant because Plaintiff's claims arose in this district and Defendant does substantial business in this district.

4.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events and/or omissions at issue occurred in this district.

## PARTIES

5.     Plaintiff Crystal Kaye Trites is and was a resident of Genesee County, Michigan at all times relevant to this action, and is a citizen of Michigan.

6.     Defendant 21st Mortgage Corporation is a Delaware corporation with its principal place of business in Knoxville, Tennessee, and is a citizen of Tennessee. Defendant boasts on its website that it is "the nation's largest manufactured home lender and originates more than $1.3 billion in new and used home loans each year."

## FACTUAL ALLEGATIONS

7.     Plaintiff has lived and currently lives with her husband and four children in Grand Blanc, Michigan.

8.     Three of Plaintiff's children have been diagnosed with certain disabling medical conditions.

9.     As a result of their disabilities, Plaintiff's children qualify for and have been awarded Supplemental Security Income ("SSI") by the Social Security Administration ("SSA").  Plaintiff is the designated payee for her children's SSI benefits.

10.     Plaintiff also receives, for herself and her four children, SSA payments as a result of her husband's disability.

2

11.     Since June, 2017, Plaintiff has rented a manufactured home ("Unit 71") in Grand Blanc, Michigan from Meritus Communities ("Meritus").  In October, 2018, Meritus informed Plaintiff that it would no longer lease Unit 71, and that Plaintiff had until December 31, 2018 to either purchase or vacate the property.

12.     When Plaintiff expressed interest in purchasing Unit 71, Meritus arranged for Plaintiff to apply for financing through Defendant to purchase the unit. Plaintiff did not qualify for a loan for the purchase of Unit 71 at a price of $43,000.00, and instead applied for financing to purchase a less expensive unit that was being sold by Meritus for $36,900.00 ("Unit 431").

13.     In October 2018, Defendant initially approved Plaintiff for a 15-year fixed-rate loan to purchase Unit 431.

14.     To finalize the loan transaction, however, Defendant required Plaintiff to provide various documents and information to verify her income.

15.     At Defendant's request, Plaintiff provided Defendant, among other things, the SSA award letters for herself and her children.

16.     The award letters did not indicate any ending dates for the children's disabilities or their payments.

17.     Although Defendant received the SSA award letters from Plaintiff, it also required Plaintiff to provide a physician's note stating that her children would

be permanently disabled and forever unable to live independently as a result of their disabilities.

18.     Defendant required this information because it is Defendant's policy to either:  1) facially discriminate against applicants who rely on income from a public assistance program (like SSA disability benefits) by subjecting them to a presumption that their SSI award letters are insufficient evidence of income, and requiring such applicants to meet a higher standard of proof than individuals who do not rely on income from public assistance programs; or 2) require medical substantiation for income based on a disability in a manner which, while arguably neutral on its face as to an applicant's receipt of public assistance, nevertheless has a disparate impact on the recipients of income from public assistance programs.

19.     Plaintiff could not obtain or provide the physician's letter Defendant required, and, as a result, was denied the loan from Defendant.

20.     Defendant's policy and practice, as outlined above, which resulted in Plaintiff being required to provide a physician's note to prove that her children's disabilities will continue permanently imposes unwarranted burdens on persons receiving public assistance, in direct violation of the ECOA.

21.     For instance, the Consumer Financial Protection Bureau ("CFPB") considers SSA award letters, to the extent that they do not specify a defined-term

and expiration date for disability benefits, to establish that income "is effective and likely to continue." 12 C.F.R. § 1026, App Q § I.B.11.

22.     The CFPB also does not consider "[p]ending or current re-evaluation of medical eligibility for benefit payments … [as] an indication that the benefit payments are not likely to continue." *Id.*

23.     Here, the SSA award letters provided to Defendant did not specify a defined-term of disability or an expiration date for the disability benefits.  As such, the SSA award letters established a presumption that the disability payments were "likely to continue."

24.     Yet, Defendant required Plaintiff to submit medical information in addition to the SSA award letters and to prove that public assistance would continue during the loan term, and beyond.  In essence, in order to qualify for a 15 year loan, Defendant required Plaintiff to present medical evidence that her children would be disabled for the rest of their lives and would never be able to live on their own, such that Plaintiff would receive their disability payments forever.

25.     Defendant required Plaintiff to prove that her public assistance income source would continue permanently.

26.     Defendant does not require individuals receiving non-public assistance income to prove that their income source will continue permanently.

27. Defendant's policies and practices described herein deny and discourage individuals receiving public assistance, like Plaintiff, an equal opportunity to obtain financing and financial services. Alternatively, such policies and practices, to the extent they are neutral on their face as to an applicant's receipt of income from a public assistance program, result in a disparate impact against recipients of income from a public assistance program.

28. Plaintiff accordingly brings this action to permanently enjoin Defendant's unlawful policy and practice and obtain recovery on behalf of herself and a class of similarly situated individuals.

## CLASS ALLEGATIONS

29. Plaintiff brings this action under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure and seeks to certify the following class: "All individuals receiving SSA disability payments who applied for a loan with Defendant."

30. Numerosity: The class is so numerous that joinder is impracticable.

31. Ascertainability: The class is ascertainable because Defendant keeps and collects relevant information on each class member.

32. Typicality: Plaintiff's claims are typical of the claims of the class members because the claims of Plaintiff and the class members are based on the same legal theories and arise from the same unlawful conduct.

33.     <u>Common Questions of Fact and Law Exist and Predominate Over</u>
<u>Individual Issues:</u> Plaintiff and the class members share numerous common
questions of law and fact that will drive the resolution of this litigation. Most
significantly, there is a single common answer to whether Defendant's practice of
requiring SSA disability income recipients to provide physicians' letters concerning
their receipt of SSA disability payments is lawful, either as a matter of disparate
treatment or disparate impact discrimination against the recipients of income from a
public assistance program. This question and other common questions of law and
fact will drive the resolution of this litigation and predominate over any individual
issues.

34.     <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of
the class because Plaintiff's interests do not conflict with the interests of the class
members. Plaintiff will fairly, adequately, and vigorously represent and protect the
interests of the class and has no interests antagonistic to the class members. Plaintiff
has retained counsel who are competent and experienced in the prosecution of class
action litigation.

35.     <u>Superiority:</u> The injury sustained by each class member is not of such
magnitude that it is economically feasible to prosecute individual actions against
Defendant. Requiring many injured plaintiffs to file individual suits would impose a
crushing burden on the court system and almost certainly lead to inconsistent

judgments. Class treatment, by contrast, presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

<strong>COUNT I – DISPARATE TREATMENT</strong><br>
<strong>Violation of the Equal Credit Opportunity Act ("ECOA"),</strong><br>
<strong>15 U.S.C. §§ 1691, <em>et seq.</em></strong>

36.     The allegations contained in the previous paragraphs are incorporated by reference.

37.     Plaintiff is an "applicant," as that term is defined under the ECOA.

38.     Defendant is a "creditor," as that term is defined under the ECOA.

39.     Plaintiff applied for "credit" from Defendant, as that term is defined under the ECOA.

40.     The SSA and SSI disability payments received by Plaintiff derive from a "public assistance program" as that term is defined under the ECOA.

41.     The ECOA specifically states:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . (2) because all or part of the applicant's income derives from any public assistance program.

15 U.S.C. § 1691(a).

42.     Defendant's actions, policies and practices described herein constitute facial discrimination because Defendant imposed additional burdens on Plaintiff to

obtain financing due to Plaintiff's receipt of income from a public assistance program.

43.     As a result of Defendant's violation of the  ECOA, and the injury and harm it caused, Plaintiff is entitled to actual damages, punitive damages, statutory damages, attorneys' fees and costs, and injunctive and declaratory relief under 15 U.S.C. § 1691e.

**COUNT II – DISPARATE IMPACT**
**Violation of the Equal Credit Opportunity Act ("ECOA"),**
**15 U.S.C. §§ 1691, *et seq.***

41.     The allegations contained in the previous paragraphs (other than in Count I) are incorporated by reference.

44.     Plaintiff is an "applicant," as that term is defined under the ECOA.

45.     Defendant is a "creditor," as that term is defined under the ECOA.

46.     Plaintiff applied for "credit" from Defendant, as that term is defined under the ECOA.

47.     The SSA and SSI disability payments received by Plaintiff derive from a "public assistance program" as that term is defined under the ECOA.

48.     The ECOA specifically states:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . (2) because all or part of the applicant's income derives from any public assistance program.

15 U.S.C. § 1691(a).

43.     In the alternative to Count I, and to the extent that Defendant denies the existence of a facially discriminatory policy against applicants who derive income from a public assistance program, Plaintiff alleges that Defendant's policies and practices—even if facially neutral as to applicants who derive income from a public assistance program—have an illegal and discriminatorily disparate impact on applicants who derive income from a public assistance program.

44.     As a result of Defendant's violation of the ECOA, and the injury and harm it caused, Plaintiff is entitled to actual damages, punitive damages, statutory damages, attorneys' fees and costs, and injunctive and declaratory relief under 15 U.S.C. § 1691e.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a.      An order certifying the proposed class;

b.      An order appointing Plaintiff as class representative and Plaintiff's counsel as class counsel;

c.      An order awarding actual, punitive, statutory and all other damages available by law, along with pre-and post-judgment interest;

d.      An order awarding attorneys' fees and costs;

e.      An order declaring Defendant's policies and practices described herein unlawful;

f.      An order enjoining Defendant from continuing to apply the policies and practices described herein;

10

g.    An order awarding all other relief that is just, equitable and
appropriate.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all claims so triable.

Respectfully Submitted,

Dated: May 9, 2019              By:    _____/s/_____
Daniel Myers
Law Offices of Daniel O. Myers, PLLC
4020 Copper View Ste. 225
Traverse City, MI  49684
Phone: (231) 943-1135
Fax: (231) 368-6265
dmyers@domlawoffice.com

Gary F. Lynch
glynch@carlsonlynch.com
Jamisen A. Etzel
jetzel@carlsonlynch.com
Carlson Lynch, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
412-322-9243 (p)
412-231-0246 (f)

Kevin Abramowicz
BCJ Law LLC
186 42nd Street
PO Box 40127
Pittsburgh, PA 15201
(412) 223-5740
kevina@bcjlawyer.com

*Attorneys for Plaintiff*

11