UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL KAYE TRITES, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.

Civil Case No. 19-11387
Honorable Linda V. Parker

21ST MORTGAGE CORPORATION,

      Defendant.
_____/

# OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S MOTION TO TRANSFER VENUE

Plaintiff initiated this putative class action lawsuit on May 9, 2019, claiming that Defendant violated the Equal Credit Opportunity Act ("ECOA") when processing Plaintiff's loan application. Plaintiff filed an Amended Complaint on August 7, 2019, in which she claims that Defendant discriminated against her because her income includes public assistance—that being, Social Security Administration disability payments. Plaintiff also claims that Defendant's practices have a disparate impact on loan applicants who derive income from a public assistance program.

On July 3, 2019, Defendant filed a motion to change venue pursuant to 28 U.S.C. § 144(a). (ECF No. 10.) The motion has been fully briefed. (ECF Nos. 15,

18.) On August 21, 2019, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 17), which also has been fully briefed. (ECF Nos. 19, 20.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument with respect to both motions pursuant to Eastern District of Michigan Rule 7.1(f). Because the Court concludes that Plaintiff fails to plead viable claims, it is granting Defendant's motion to dismiss. Defendant's request to transfer the matter to another jurisdiction is therefore moot.

## I. Applicable Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However,

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II. Factual and Procedural Background

Plaintiff resides in Grand Blanc, Michigan, with her husband and four children. (Am. Compl. ¶ 7, ECF No. 16 at Pg ID 157.) Three of Plaintiff's children have been diagnosed with disabling medical conditions and qualify for and have been awarded Supplemental Security Income ("SSI") by the Social Security Administration ("SSA"). (*Id.* ¶¶ 8, 9, Pg ID 157.) Plaintiff also receives, for herself and her four children, SSA payments due to her husband's disability. (*Id.* ¶ 10, Pg ID 157.)

In Fall 2018, Plaintiff applied for financing through Defendant to purchase a manufactured home for $36,900.00.[1] (*Id.* ¶ 12, Pg ID 158.) Plaintiff's application (which is referenced in the Amended Complaint), reflects that her children were ages 17, 15, 12, and 9. (Def.'s Mot., Ex. 1, ECF No. 17-2.) Plaintiff applied for

---

[1] Plaintiff tried to purchase the manufactured home she had been renting, but she did not qualify for a loan to purchase the unit which cost $43,000.00. (Am. Compl. ¶ 12, ECF No. 16 at Pg ID 158.)

4

the loan with her husband Travis A. Trites and an unrelated third party, Daniel J. Jordan.  (*Id.*)

In October 2018, Defendant initially approved Plaintiff for a fifteen-year fixed-rate loan.  (Am. Compl. ¶ 13, ECF No. 16 at Pg Id 158.)  To finalize the loan transaction, Defendant required Plaintiff to provide various documents and information to verify her income.  (*Id.* ¶ 14, Pg ID 158.)  This information included the SSA award letters for the disability income Plaintiff and her children had been awarded, as Plaintiff sought to include the benefits as income to qualify for the loan.  (*Id.* ¶ 15, Pg ID 158.)  The award letters did not include an ending date for the children's receipt of disability benefits.  (*Id.* ¶ 16, Pg ID 158.)

On October 15, 2018, Defendant denied Plaintiff's application.  (*Id.* ¶ 17, Pg ID 158.)  Defendant explained that Plaintiff's and the co-applicants' incomes were insufficient for the amount of credit requested.  (*Id.* ¶ 18, Pg ID 158; *see also* Def.'s Mot., Ex. 2, ECF No. 17-3 at Pg ID 222.)  Defendant's Denial Notice also provided that Defendant was unable to use the disability benefits for two of Plaintiff's children, due to their age: "Cannot consider for dependent 15 and older."  (Def.'s Mot. Ex. 2, ECF No. 17-3 at Pg ID 222; *see also* Am. Compl. ¶ 19, ECF No. 16 at Pg ID 159.)

Plaintiff requested reconsideration of the decision, but Defendant denied her request.  (Am. Compl. ¶ 20, ECF No. 16 at Pg ID 159.)  In this second denial,

5

Defendant again stated that Plaintiff's and the co-applicants' incomes were insufficient for the loan sought. (*Id.* ¶ 21, Pg ID 159.) Defendant further stated: "We need complete awards letter to verify SSD for dependents over 15 will continue for life with a letter from a Dr to verify they each will require guardianship after 18[.]" (Def.'s Mot. Ex. 3, ECF No. 17-4 at Pg ID 224.) Unable to obtain this documentation, Plaintiff was denied the loan. (Am. Compl. ¶ 23, ECF No. 16 at Pg ID 159.)

Plaintiff asserts that Defendant discriminated against her by failing to consider the disability payments awarded to her children who are over age 15, or by requiring documentation from a doctor showing that their disabilities will continue for life. (*Id.* ¶ 24, Pg ID 159.) Plaintiff maintains that Defendant does not require individuals receiving non-public assistance income to prove that their income source or a factor affecting their income source will continue permanently. (*Id.* ¶ 30, Pg ID 160.) Plaintiff also alleges that Defendant's policies and practices disparately impact individuals receiving public assistance income because SSA award letters do not state that disabilities are permanent, and physicians rarely will or can state whether a disability will continue for life. (*Id.* ¶ 32, Pg ID 161.)

### III. Applicable Law and Analysis

ECOA was enacted, in relevant part, to "promote the availability of credit to all creditworthy applicants without regard to … the fact that all or part of the

6

applicant's income derives from a public assistance program." 12 C.F.R. § 202.1(b). To further that goal, the statute prohibits creditors from discriminating "against any applicant, with respect to any aspect of a credit transaction . . . because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a)(2). Plaintiff maintains that Defendant violated this provision by requesting documentation beyond the SSA award letter for her children's benefits. In *Wigginton v. Bank of America Corporation*, 770 F.3d 521 (7th Cir. 2014), *cert. denied* 135 S. Ct. 2315 (2015), the court affirmed the dismissal of a similar discrimination claim. *See also Bowman v. Bank of Am., N.A.*, No. 3:13-cv-3436, 2016 WL 8943266, at *7 (D.S.C. June 16, 2016) (unpublished), *aff'd* 676 F. App'x 216 (4th Cir. 2017) (dismissing the plaintiff's ECOA claim based on the bank's request for medical documentation of the plaintiff's disability because the bank "had an obligation to verify" the plaintiff's financial status and there was no evidence to show that the bank's request "was anything other than an attempt to satisfy this obligation.").

In *Wigginton*, the plaintiffs had applied to Bank of America for a mortgage loan and represented that they would use social security disability income to repay the loan. *See Wigginton v. Bank of Am. Corp.*, No. 11-C-50162, 2013 WL 4854373, at *1 (N.D. Ill. Sept. 11, 2013). The bank asked the plaintiffs for additional information, including "a letter from a doctor for each of you since you

7

are both on disability stating whether or not your medical conditions are likely to improve within the next three years or is this a lifetime disability." *Id.* The bank subsequently clarified that it only required proof that the plaintiffs' benefits would continue for three years. *Id.* When the plaintiffs did not provide the documentation, the bank declined to extend the loan and the plaintiffs sued, alleging discrimination. *Id.* at \*1-2.

The district court observed that the only reason the bank was seeking further information about the plaintiffs' disabilities was because they were attempting to rely on that income to qualify for the loan. *Id*. at \*3. "Once [the] plaintiffs put their disability income into issue by relying on that income as part of their mortgage application, they cannot then turn around and claim that the bank was discriminating against them simply because the bank asked if that disability income was likely to continue for the next three years." *Id.*; *see also Wigginton*, 770 F.3d at 522. As the Seventh Circuit observed, the bank "apparently asks *everyone* who applies for a loan to provide a good reason for it to think that the applicant's current income will continue." 730 F.3d at 522 (emphasis added). As disability benefits are not locked in for life, the appellate court concluded that the bank was permitted to request information to assess the likelihood of the benefits continuing. *Id.* at 523. Such information, the court specifically noted, could

prudently include the nature of the disability, from which the likely duration of benefits might be inferred. *Id*. at 522.

ECOA expressly provides that a creditor does not engage in discrimination when making an inquiry "of whether the applicant's income derives from any public assistance program if such inquiry is for the purpose of determining the amount and probable continuance of income levels, credit history, or other pertinent element of credit-worthiness as provided in regulations by the Bureau [of Consumer Financial Protection]." 15 U.S.C. § 1691(b)(2). The Bureau's regulations state that "a creditor may consider the amount and probable continuance of any income in evaluating an applicant's creditworthiness." 12 C.F.R. § 1002.6(b)(5); *see also* 12 C.F.R. Pt. 1002 Supp. I ¶ 6(b)(2)(6) ("When considering income derived from a public assistance program, a creditor may take into account … [t]he length of time an applicant will likely remain eligible to receive such income."). The regulations also state that a creditor may consider "[w]hether the applicant will continue to qualify for benefits based on the status of the applicant's dependents …." *Id*. The documentation Defendant requested was designed to make this assessment.

As a general rule, a beneficiary is entitled to manage his or her own social security benefits once the beneficiary reaches eighteen years of age. *See* 20 C.F.R. § 404.2001(b)(1). Plaintiff's two older children, who were 15 and 17 when

Plaintiff applied for the loan, would have turned eighteen years of age within three years of Plaintiff's application for benefits.  At that time, their benefits could no longer be included in calculating Plaintiff's income unless they were unable to manage their benefits due to a mental or physical condition and Plaintiff continued as their representative payee based on legal guardianship.  *See* 20 C.F.R. §§ 404.2001(b)(1), 404.2021(a)(1).  The Social Security Regulations provide for disability payments to a representative if beneficiaries are unable to manage the benefits due to a mental or physical condition or their youth.  20 C.F.R. § 404.2001(b)(1).

Plaintiff contends that Defendant's requests came too late and went too far.  Plaintiff maintains that Defendants' refusal to consider her children's disability benefits when assessing her income and initially denying her application reveals a discriminatory intent.  However, the Bureau's regulations expressly prohibit a creditor from including as a source of income social security benefits that will expire within the first three years of the loan.  12 C.F.R. Pt. 1026, App. Q § I.B.11.  Plaintiff also argues, however, that if an SSA award letter does not indicate a defined expiration date within three years of loan origination, the Bureau's regulations require creditors to consider the income effective and likely to continue.  *Id.* at Note i.  She cites *Gomez v. Quicken Loans, Inc.*, 629 F. App'x 799 (9th Cir. 2015) (unpublished), where the court concluded that the plaintiff's

complaint stated a plausible ECOA discrimination claim based on the creditor's request for medical proof of the plaintiff's current and future disability as a condition to approve his mortgage loans. *Id.* at 802.

*Gomez* is distinguishable, however, because the disability benefits for which the creditor sought more information belonged to the plaintiff. Here, the benefits belonged to Plaintiff's children. Even if the award letters reflected that the children's benefits would likely continue, they did not convey whether *Plaintiff* would likely continue as the children's representative payee. Under the Social Security Regulations, it was presumed that the benefits payable to Plaintiff's seventeen-year old child would not be payable to Plaintiff within a year of her loan application. And the benefits payable to Plaintiff's fifteen-year old child would not be payable to Plaintiff at some point in the third year of the loan. Defendant sought information to determine if this presumption could be overcome. The Social Security Regulations provide that the agency will consider "a statement by a physician or other medical professional based upon his or her recent examination of the beneficiary and his or her knowledge of the beneficiary's present condition" as proof that an adult beneficiary requires "representative payments." 20 C.F. R. § 404.2015(b).

Plaintiff maintains that, before its initial decision to deny her application, Defendant should have requested documentation to support her likely continued

status as her children's representative payee after they became adults. Plaintiff argues that Defendant's failure to do so is proof of its discriminatory intent. Plaintiff cites no support requiring Defendant to first seek this documentation. As set forth earlier, the Social Security Regulations presume that a beneficiary will be able to manage his or her own benefits upon turning age eighteen. 20 C.F.R. § 404.2001(b)(1). Notably undermining Plaintiff's assertion that Defendant's conduct reflects its discriminatory intent is the fact that Defendant only declined to consider the public assistance payments of Plaintiff's children who would reach eighteen within three years. (*See* Def.'s Mot., Ex. 2, ECF No. 17-3.) Defendant included the public assistance payments for Plaintiff's younger child in determining her eligibility, as well as the benefits paid to Plaintiff directly as a result of her husband's disability. (*See* Compl. ¶ 10, ECF No. 1 at Pg ID 9.)

Plaintiff also maintains that Defendant's discriminatory intent can be gleaned from its request for documentation establishing that the public assistance payments would "continue for life"—which she claims is an "arbitrary and insurmountable hurdle[]." (Pl.'s Resp. Br. at 10, ECF No. 19 at Pg ID 248.) In context, however, this request does not render Plaintiff's discrimination claim "plausible." Under ECOA, a lender's inquiry into an applicant's public assistance income is not discriminatory "if such inquiry is for the purpose of determining the amount *and probable continuance of* income levels …." 15 U.S.C. § 1691(b)(2)

(emphasis added). Notably, as Defendant points out, it accepted the disability benefits to Plaintiff and her third child without such proof.

For these reasons, the Court concludes that Plaintiff fails to plead a plausible discrimination claim against Defendant. Alternatively, Plaintiff argues that Defendant's policy of requiring additional documentation from loan applicants who derive their income from public assistance programs has a disparate impact on those applicants. To plead a plausible disparate impact claim, a plaintiff does not need to show that the defendant "intended to discriminate, but must instead prove that a particular … practice, although neutral on its face, has produced a significant adverse effect on a protected group to which the plaintiff belongs." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir. 2000); *see also Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Communities Project, Inc.*, -- U.S. --, 135 S. Ct. 2507, 2513 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)) (to state a disparate-impact theory of liability, the plaintiff is required to demonstrate that the challenged practices have a " 'disproportionately adverse effect on [a protected class]' and are otherwise unjustified by a legitimate rationale."). Plaintiff fails to plead a plausible disparate impact claim.

Plaintiff provides no factual allegations to support her disparate-impact theory. Instead, her Complaint contains only vague and conclusory assertions that Defendant treats applicants receiving public assistance differently. While Plaintiff

13

need not plead a prima facie case to avoid dismissal, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

As an initial matter, Plaintiff's factual allegations do not even support her claim that Defendant has a policy of requesting additional documentation from loan applicants receiving public assistance. Defendant did not request additional documentation to support the public assistance income received for Plaintiff's younger child. In any event, even if such a policy exists, Plaintiff alleges no facts to support her assertion that Defendant disproportionately denies loan applications from individuals receiving public assistance.

The Court therefore concludes that Plaintiff's disparate impact claim also must be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (ECF No. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion to transfer venue (ECF No. 10) is **DENIED AS MOOT**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: March 31, 2020